Judge Underwood,
delivered the opinion of the court. ’
This was a motion inbehalfofthe plaintiff in error, against Flournoy, as sheriff of Scott county, *100 and his sureties, to recover from them, the amount oí an execution, and thirty per centum damages, &<?. for a failure to return it within one month after the day on which it was made returnable.
Statute giv-damages ag*st sheriff, for5 failure to re-cuthmwilhin amonth after return day, is amftesü^mony must be very clear, to au-merdagairit officer, in such ea66‘
The notice describes the execution, as afi.fa, dated on the 17th of May, 1826, issued from the office of the clerk of the Franklin circuit court, in the name of John B, Bernard, administrator of Levi Craig, deceased, against the estate of James Johnson, for the sum of §‘1097 debt, with interest from the 1st day of September, 1820, until, paid, and costs; but subject to some credits, which are specified in the notice, returnable on the 19th day of July, 1826, and directed to the sheriff of Scott county.
Upon the trial, the court overruled the motion, and gave a judgment for costs against the plaintiff, to reverse which, he prosecutes this writ of error.
The statute, under which the motion was made, is highly penal, and the testimony, to authorize a judg-men^ aga™st the officer in such a case, should be very • clear against him. It is quite easy, for every plaintiff in an execution, by tire exercise of the proper caution, to have h inhis power to prove, in the most satisfactory * manner, the delivery of it to the officer; and where that js shown, however hard the case may seem to be, the Provisi°ns °f the statute are imperative, and the officer must not expect to find a shield, in the clemency of a court, against the consequences of his negli gence, in fail-return it, for one month after the return clay,
But the officer can preserve no testimony, that he did not receive the execution. It would, therefore, behighly improper, and a case of extreme hardship, particularly, where the defendant in such an execution was insolvent, to subject the sheriff to the payment of its amount, with thirty per centum damages thereon, unless the proof be. decisive of his alleged default. Such, we think, is not the character of that, which was introduced in this case.
A witness, by the name of Scandret, swore, that about a month after the date of the execution, he carried it to Georgetown, Scott county, and not finding the sheriff, pncloseditinaletterdirectedto Wood, the deputy of the sheriff of that county, and delivered the letter to Evans, a tavern keeper, with a request, that he would hand it *101 tó said Wood; that Evans afterwards informed him, he had delivered the letter to Wood, in about three days from that time; and that, in March,' 1827, the witness heard Wood state, he had received the execution, had put it in the post office. He also swore, that upon inquiry atthepost ó^ce,(butwhatofficehe didnot state,) he could hear nothing of said execution.
Confessions of factory kind of testimony,
The clerk of the Franklin circuit court was examined, and staled, that it was a practice observed in his office, to record the return of an execution, when it was made, and that it did not appear, from his execution book, ■the one described in the notice had been returned; except that, no other against James Johnson, or any of the Johnsons in Scott county, had issued, during the months of March, April, May, June, July, August, September, or October, 1820.
If the memory of Scandret is to be relied upon, his statement would show, that Wood received the execution,and it isprobable,before its return day. But from Evans’s statement, who was also introduced, and examined as a witness, that may well be doubted.
He said, that he had no recollection of the circumstances mentioned by Scandret, in his testimony, although the latter had frequently attempted to remind him of them;- he alsó stated, that, in one of those conversations, Scandret said, he had either handed the letter to Evans, or stuck it up in his bar room. But for the acknowledgment of Wood then, the testimony, on the part of the plaintiff, would have been obviously insufficient; and we do not consider that, under all the circumstances of this case, as sufficient to have justified a different judgment, from that which was rendered.
The confessions of a party to a cause, have been long since pronounced by this court to be the most unsatisfactory kind of testimony, on account of the facility, with which they may be fabricated, and the difficulty of disproving them, when false. If that of Wood be taken, however, as absolutely conclusive of the fact of his reception of an execution, it still leaves the matter in doubt, as to the time, and whether it was then in force. How long the letter remained at the tavern; how the conversation between Scandret and the deputy sheriff originated; what further explanation, if any, he gave; whether any one else was present; whether the execu *102 tion, of which lie spoke, was that enclosed in the letter; in fine, whether the letter had ever been received, the proof leaves us to conjecture.
The post master at Georgetown was also examined by the plaintiff; who swore, that about the middle of October, 1826, Wood presented to him, a receipt or certificate, for his signature, which was antidated fifteen or twenty daj-s, which receipt was for an execution. He did not recollect the name of either the plaintiff or defendants, therein, but his impressions were, that some of the Johnsons were defendants, and he beleived there were more than one defendant, and that it issued from the Franklin circuit court. Upon discovering the anti-date, he was indignant, and refused to sign it, upon which, Wood explained the matter, by saying, that he had applied some time previously, in the absence oí the post master, with the certificate written, to place the execution in the office, which was the cause of its being so dated. He requested the witness to alter the datej and sign it, which he did. About the time the certificate bore date, he had been absent from the county of Scott. This testimony was introduced, we presume, to show, that the execution, then placed in the office, was the one mentioned in the notice, but is insufficient, whether viewed separately, or in connexion with the other testimony, to prove the fact, if it existed. James Johnson was the only defendant, in that spoken of, by Scandrct. The witness did not state, what disposition he made of the execution, after he signed the certificate or receipt for it. - The object, we suppose, in obtaining the receipt was to show, that it was then forwarded to the proper office. The post master surely would not have signed such a paper, without causing the execution to be forwarded. Had the sheriff been notified to produce the receipt, its production would have put the matter beyond doubt. But this was not done. Besides, the deputy could have had no object in view, with an eye to his sefety, or that of his principal, in procuring the receipt, even with the date which it bore, when first presented, if it related to the execution described in the notice. That was returnable on the 19th of July, 1826. For a failure to return it, within one month thereafter, the sheriff would have been liable to the penalty prescribed in the statute. About the middleof October, he applied at the post office, with the receipt antidated by *103 fifteen or twenty days. Had it related to tbe execution in favor of the plaintiff in error, instead of aiding the sheriff, it put it in the power of the postmaster to prove incontestibly, his default, and the receipt would have been strong and conclusive testimony against him.
Monroe, for plaintiff; Chinn, for defendant.
Another fact presents itself, which is not unworthy of consideration.
Scandret says, that he had been employed by the plaintiff, to attend to the collection of the money, for which the execution issued, and was, by contract, to have received twenty-five per centum, on the amount collected. At the time of giving his testimony, he had no interest in the matter, having been otherwise compensated. The sum due, and the compensation, agreed to be given to the witness, shows that the ability of James Johnson to discharge the execution, was considered very doubtful.
Although Scandret’s character stands unimpeached, and there is not the slightest ground to suspect his veracity, or the honesty of his motives, the inclination of his mind, situated as he was, at the time, he says, Wood made the acknowledgment to him, to seize with avidity, upon such testimony as mightconvict the sheriff of negligence, of which, no doubt, he honestly believed him to be guilty, may well be presumed. We are, however, of opinion, that whatever may be'the facts, if they could be fully developed, the testimony was not such, as demanded a judgment against the defendant.
The judgment of the circuit court must be affirmed with costs.